## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IRIS YANET GALINDEZ ROSARIO, | |
| Plaintiff, | Civil Action No. 21-15609 (FLW) |
| v. | **OPINION** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

**WOLFSON, Chief Judge:**

Iris Yanet Galindez Rosario ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), denying Plaintiff's application for disability under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge ("ALJ") erred by failing to adequately consider Plaintiff's mental limitations in the residual functional capacity ("RFC"). Accordingly, the ALJ's decision is **VACATED**, and the Court remands this matter for further proceedings.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, born on November 30, 1963, was 53 years old on her alleged disability onset date of September 25, 2017. (A.R. 833.) On April 25, 2018, Plaintiff filed a Title II application for a period of disability alleging various physical impairments, including joint pain, arthritis, carpal tunnel syndrome, and diabetic neuropathy, as well as unspecified mental impairments.  (A.R. 833-36, 865.) The application was denied on December 26, 2018. (A.R. 728-32.) It was again denied upon reconsideration on April 16, 2019. (A.R. 736-38.) Plaintiff then filed a written request for a

hearing before an administrative law judge, which was held on November 7, 2019. (A.R. 739.) On March 3, 2020, the ALJ determined that Plaintiff was not disabled under the relevant statutes (A.R. 617-631). Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on June 15, 2021. (A.R. 1.)

A.    **Review of Medical Evidence**

1.  *Medical Records*

i.  **Physical Impairments**

Plaintiff underwent left knee surgery on December 28, 2015, due to a torn lateral meniscus. (A.R. 1062-65.) On July 19, 2018, Plaintiff visited Nicholas DeLaney, M.D. at Premier Orthopedics & Sports Medicine, complaining of left knee pain. (A.R. 1508-10.) Plaintiff described her pain as significant, constant, and worsened by walking, standing, and taking stairs. (A.R. 1508.) Plaintiff also reported swelling, numbness, stiffness, limping, clicking, popping, and weakness. (*Id.*) Dr. DeLaney ordered x-rays of the left knee, which revealed moderate arthritis with moderate loss of joint space, sclerosis, spurring, and degenerative changes. (A.R. 1509.) Dr. DeLaney diagnosed Plaintiff with osteoarthritis of the left knee, and he provided Plaintiff with a steroid injection. (*Id.*) Plaintiff visited Dr. DeLaney in August, September, and October 2018 for follow-up care to her left knee, and to continue steroid injections. (A.R. 1512-23.) Plaintiff reported that the injections eased her pain for several weeks, but that the pain consistently returned. (A.R. 1512, 1518, 1521.)

On August 31, 2018, Plaintiff presented to Alexander Hoffman, M.D. for a consultative examination. (A.R. 1085-89.) Dr. Hoffman evaluated Plaintiff's ambulatory capacity, and he opined that it was "rather limited" due to previous surgery and obesity. (A.R. 1086.) In particular, Dr. Hoffman found Plaintiff had reduced range of motion in the lower extremities, including the

left knee and lumbar spine, as well as tenderness in the left knee. (A.R. 1086, 1088-89.) Plaintiff presented with full range of motion in her wrist, elbow, and shoulder, as well as relatively good range of motion in her right knee. (A.R. 1086.) Plaintiff also reported an eighteen-year history of diabetes and resultant diabetic neuropathy. (A.R. 1085.) Also on August 31, 2018, Plaintiff presented to Stephen Toder, M.D. for an additional consultative examination. (A.R. 1091-93.) Upon examination and analysis of imaging, Dr. Toder noted degenerative changes in Plaintiff's left knee and cervical spine, as well as mild degenerative changes in the lumbar spine and right knee. (A.R. 1092-93.)

On November 1, 2018, Plaintiff returned to Dr. DeLaney complaining of bilateral hand numbness. (A.R. 1524-26.) Plaintiff noted having experienced hand numbness for several years, and that she was previously diagnosed with carpal tunnel syndrome in Puerto Rico. (A.R. 1524.) In prior treatment, Plaintiff was unable to find relief through splinting. (*Id.*) X-rays of both of Plaintiff's wrists revealed no evidence of fracture, bone lesions, or other abnormalities. (A.R. 1525.) Examination showed positive Tinel's sign, Phalen's test, and median nerve compression test, as well as tenderness on the palmar aspect of the wrist, all of which are findings consistent with carpal tunnel syndrome. (*Id.*) Dr. DeLaney also noted tenderness in both wrists, however, the Plaintiff had normal wrist range of motion and sensation, and her grip strength was 4+/5. (*Id.*) As a result, Dr. Delaney diagnosed Plaintiff with bilateral carpal tunnel syndrome, and Plaintiff was fitted with wrist braces. (*Id.*) Dr. DeLaney affirmed his findings in December 2018, at Plaintiff's follow-up visit. (A.R. 1527-29.)

Throughout 2018, Plaintiff developed low back pain without injury. (A.R. 1530.) On December 27, 2018, Plaintiff presented to Justin Yucht, D.O. to address that pain, which Plaintiff reported as intermittent and throbbing, aching, and shooting. (A.R. 1530-32.) Imaging of

Plaintiff's lumbar spine showed degenerative changes, but normal alignment. (A.R. 1532, 1031.) Dr. Yucht diagnosed Plaintiff with lumbago, *i.e.*, lower back pain, and lumbosacral spondylosis. (A.R. 1532.) He recommended physical therapy and prescribed Plaintiff Flexeril at Plaintiff's request. (*Id.*) Plaintiff later reported that her back pain resolved. (A.R. 1539.)

In February 2019, Plaintiff visited Christine Corradino, M.D. for additional care for her carpal tunnel syndrome. (A.R. 1104-06.) Based on an analysis of an electromyography conducted of Plaintiff's wrist in January 2019, Dr. Corradino opined that Plaintiff's bilateral carpal tunnel syndrome was mild. (*Id.*) Dr. Corradino informed Plaintiff of possible treatment plans, which included surgery and physical therapy. (A.R. 1106.) Dr. Corradino suggested a follow-up visit with Plaintiff, but no such visit occurred. (*Id.*)

In March 2019, Plaintiff began further treatment for her arthritis and joint pain with Sushama Mody, M.D. (A.R. 1161.) Plaintiff initially reported joint pain that worsened with activity and caused difficulty with daily living. (A.R. 1161.) Upon examination, Dr. Mody diagnosed Plaintiff with fibromyalgia. (A.R. 1165.) Dr. Mody affirmed her findings in April, June, and August 2019 (A.R. 1448-49, 1455-56, 1471-72.) On October 24, 2019, Plaintiff presented again to Dr. Mody, complaining of persistent pain in her hands, arms, legs, lower back, and bilateral shoulders, as well as difficulty lifting her hands over her head. (A.R. 1629.) Dr. Mody further diagnosed Plaintiff with bilateral shoulder tendinopathy, and she referred Plaintiff to physical therapy. (A.R. 1630.)

In April 2019, Plaintiff sought a sleep consultation at Riverside Medical Group for symptoms including snoring and excessive daytime sleepiness. (A.R. 1577-83.) Results of the consultation were consistent with obstructive sleep apnea. (A.R. 1588.) Subsequently, Plaintiff

began treatment with a CPAP machine. (A.R. 1589.) In October 2019, Plaintiff noted improvement in her sleep, and denied any sleepiness while driving or during daily activities. (A.R. 1597.)

In May 2019, Plaintiff returned to Dr. DeLaney, seeking additional treatment for her left knee pain and osteoarthritis. (A.R. 1536-38.) Plaintiff reported previous success with steroid injections, and she expressed a desire to start another series of injections. (A.R. 1536.) Dr. DeLaney referred Plaintiff back to Dr. Yucht, who completed the rest of Plaintiff's injections through July 2019. (A.R. 1539, 1541, 1543.) Throughout the course of her injections, Plaintiff reported improvements to her pain. (*Id.*)

On March 30, 2019, Plaintiff presented to Physician Assistant Faiza Qureshi, reporting three separate falls resulting from weakness in her knees. (A.R. 1240.) Qureshi noted that Plaintiff's left knee was not stable, and that Plaintiff required the use of a cane to ambulate. (A.R. 1241.) Qureshi diagnosed Plaintiff with bilateral chronic knee pain. (A.R. 1246.) On July 30, 2019, Qureshi also found Plaintiff had decreased strength of the bilateral hands. (A.R. 1291.)

### ii.    Mental Impairments

Generally speaking, Plaintiff has been treated for various mental impairments, including depression, post-traumatic stress disorder ("PTSD"), and anxiety. On August 28, 2018, Plaintiff presented to Joyce Echo, Ph.D. for a consultative psychological examination. (A.R. 1080-83.) Plaintiff chiefly complained of anxiety and depression. (A.R. 1080.) Plaintiff reported depressive symptoms including sadness, self-isolation, lying in bed, some suicidal ideation, reduced appetite, insomnia, and anhedonia. (A.R. 1081.). She also reported anxiety symptoms, such as pervasive worry, hypervigilance, mental fatigue, and being easily startled. (*Id.*) Dr. Echo observed some tearfulness from Plaintiff, as well as cognitive inefficiency and slowing. (A.R. 1082.) However, Dr. Echo noted that Plaintiff presented as alert and oriented with coherent speech, and would likely

be able to maintain consistent, effective social interaction and follow through on instructions. (*Id.*) Dr. Echo diagnosed Plaintiff with "other specified depressive disorder with anxious distress." (A.R. 1083.)

On February 1, 2019, Plaintiff presented to Bahar Hadjiesmaeiloo, M.D. for anxiety and depression. (A.R. 1138.) At that visit, Plaintiff reported symptoms including depressed mood, excessive worry, insomnia, anxious behavior, palpitations, and panic. (*Id.*) Plaintiff also reported poor-quality sleep, lasting five hours per night. (*Id.*) Plaintiff informed Dr. Hadjiesmaeiloo of physical and sexual abuse from her father as a child, as well as nightmares resulting from trauma suffered during Hurricane Maria. (A.R. 1139-40.) Dr. Hadjiesmaeiloo prescribed Plaintiff to start medicating with Cymbalta. (A.R. 1143.) Plaintiff visited Dr. Hadjiesmaeiloo's office for a follow-up on March 15, 2019, and continued to report depressive symptoms such as insomnia, fatigue, feelings of worthlessness, and poor judgment. (A.R. 1146.) Dr. Hadjiesmaeiloo increased Plaintiff's dosage of Cymbalta, noting that Plaintiff would begin psychotherapy. (A.R. 1149.)

Plaintiff continued to see Dr. Hadjiesmaeiloo in May, July, and August 2019. (A.R. 1389-91, 1406-08, 1423-25.) Each time, Plaintiff reported that her anxiety and depression symptoms continued, but that she noted improvement with the Cymbalta. (*Id.*) Dr. Hadjiesmaeiloo consistently observed that Plaintiff's affect was sad and, at times, tearful. (*Id.*) Dr. Hadjiesmaeiloo continued to diagnose Plaintiff with depression and PTSD. (*Id.*)

From March 2019 to August 2019, Plaintiff received treatment from Ida Kenna, a Licensed Professional Counselor ("LPC"), for management of her anxiety and depression symptoms. (A.R 1152.) Throughout treatment, LPC Kenna noted that Plaintiff presented as anxious, and at times, Plaintiff became depressed during sessions. (A.R. 1152.) Plaintiff reported having interrupted sleep each night, decreased appetite, and thoughts of suicide. (A.R. 1154.) Plaintiff also reported

6

frequent tearful episodes and a general feeling of anxiety most days, and informed LPC Kenna of past trauma. (A.R. 1154.) LPC Kenna recommended continued medication and counseling. (A.R. 1155.)

2. *Medical Opinion Evidence*

On September 25, 2018, James Bilenker, M.D., a state agency medical consultant, reviewed Plaintiff's medical record and found that Plaintiff was capable of light work with the following limitations: two hours of standing or walking throughout the workday; no pushing or pulling with the left lower extremity; occasional pushing or pulling with the right lower extremity; a reduced range of postural maneuvers; and no concentrated exposure to environmental irritants. (A.R. 674-80.) In April 2019, on reconsideration, Dr. Nancy Simpkins found similarly, except she opined that Plaintiff could withstand four hours of walking total. (A.R. 721-23.)

On September 10, 2018, Jennifer Meyer, Ph.D., a state agency psychological consultant, reviewed Plaintiff's record and found her mental impairments to be mild. (A.R. 672-74.) In so finding, Dr. Meyer noted that Plaintiff's activities were grossly intact and only limited by physical difficulties. (A.R. 673.) Further, Dr. Meyer stated that the alleged severity of Plaintiff's symptoms, based on Plaintiff's own report, was not supported by objective evidence. (*Id.*) In November 2018, another psychological consultant, Cal VanderPlate, Ph.D., agreed with Dr. Meyer's finding as to the mild nature of Plaintiff's mental impairments. (A.R. 1095-96.) In March 2019, psychological consultant Adalisse Borges, Ph.D. also affirmed Dr. Meyer's September 2018 findings. (A.R. 712-26.)

On July 30, 2019, Qureshi provided a medical source statement regarding Plaintiff's physical conditions. (A.R. 1193-95.) In her statement, Qureshi noted that she treated Plaintiff for sleep apnea, fibromyalgia, and hypothyroidism. (A.R. 1192.) She opined that Plaintiff's symptoms

were severe enough to cause her to be "off task" for greater than twenty-five percent of the workday. (*Id.*) Qureshi also noted that Plaintiff would only be able to maintain attention and concentration for fifteen minutes before requiring a break, that Plaintiff would likely be absent from work for more than four days per month. (*Id.*) Qureshi further noted several physical limitations that would result from Plaintiff's symptoms, including that she would be unable to lift more than ten pounds, could sit, stand, or walk for no more than two hours per eight-hour workday, and would need to lie down every twenty to forty minutes for at least thirty minutes. (A.R. 1193.)

On October 25, 2019, Dr. Hadjiesmaeiloo completed a treating source statement regarding Plaintiff's psychological conditions.  (A.R. 1617-22.) In his statement, Dr. Hadjiesmaeiloo noted that he treated Plaintiff for major depressive disorder and PTSD. (A.R. 1617.) Dr. Hadjiesmaeiloo opined that the Plaintiff was markedly limited in her ability to: interact with others; concentrate, persist, or maintain pace; and adapt and manage herself. (A.R. 1617-18.) She also reported that Plaintiff was moderately limited in her short-term understanding and memory. (A.R. 1620.) In addition, Dr. Hadjiesmaeiloo wrote that Plaintiff's symptoms would cause her to be off task for more than twenty-five percent of the workday, and absent more than four days per month. (A.R. 1620-21.)

**B.** **Review of Testimonial Evidence**

*1.  Plaintiff's Testimony*

At the hearing, Plaintiff testified that she was 55 years old, weighed 248 pounds, and is right-handed. (A.R. 643.) Plaintiff stated that she is divorced, has two children, and currently lives with her daughter and cousins in Lakewood, New Jersey. (A.R. 643, 647.) Plaintiff explained that she does not take public transportation, and travels mainly with the help of her cousin or niece.

(*Id.*) Plaintiff testified that she does not currently have income from any sources, and she receives food stamps. (*Id.*)  She holds an associate degree in secretarial sciences. (*Id.*)

Plaintiff has not worked since 2017. (*Id.*) Regarding her past work, Plaintiff testified that she was most recently an executive assistant. (A.R. 645.) In that job, Plaintiff was primarily seated and, at times, lifted as much as twenty pounds. (*Id.*) Prior to that role, Plaintiff stated that she worked as an administrative assistant in a casino for two years. (*Id.*) There, she was primarily seated and lifted less than five pounds. *(Id.)*

Regarding her physical impairments, Plaintiff testified that she has joint pain that makes it "hard for [her] to do anything." (*Id.*) During the hearing, Plaintiff noted that her pain was "like a seven." (A.R. 653.) Plaintiff takes medication that alleviates her pain somewhat, but also "numbs [her] senses." (A.R. 653.) Plaintiff stated that she cannot walk for more than ten to fifteen minutes at a time, cannot stand for more than five minutes, and cannot lift more than three pounds. (A.R. 648.)  After walking for ten to fifteen minutes, Plaintiff experiences pain in her legs, back, and joints. (A.R. 649.) She stated that she cannot sit for more than thirty minutes at a time without experiencing pain in her legs and body. (A.R. 648.) Plaintiff noted that she also experiences numbness, tingling, and swelling in her feet and knees due to diabetic neuropathy and osteoarthritis. (*Id.*)

Plaintiff testified that she had her meniscus removed from her left knee in 2015. (A.R. 649.) She explained that she experiences pain as a result of that surgery, which worsens at night. (*Id.*) Plaintiff has used a cane to assist her since her surgery. (A.R. 651.) Plaintiff also testified to having difficulty bending over, stating that she cannot "go all the way down" as she could in the past. (*Id.*) Plaintiff explained that she has difficulty with stairs, and she needs to use her cane and a handrail

to assist her. Plaintiff wears a brace on her leg every day. (*Id.*) Plaintiff also noted that she has difficulty using her hands, and that she at times cannot bend her fingers. (A.R. 655.)

As to mental impairments, Plaintiff testified that, due to "trauma" resulting from Hurricane Maria, she experiences anxiety. (A.R. 645.) Plaintiff explained that her anxiety is normally triggered by driving and visiting busy areas, such as the grocery store. (A.R. 656.) Plaintiff also stated that she experiences panic once or twice per day. (*Id.*)  Plaintiff explained that she often gets depressed (*Id.*) Plaintiff did not point to specific situations that trigger her panic or depression, and that both occur as a result of "thinking about everything." (*Id.*)

Plaintiff also testified regarding her daily activities. (A.R. 645-48.) Plaintiff stated that she has difficulty getting up due to her pain, and she spends most of her days around the house watching television. (A.R. 645-46, 655.) Specifically, Plaintiff explained that she lies down for an "hour or two" about four times throughout the day. (A.R. 650.) At night, Plaintiff testified to getting five hours of sleep on average, and that her sleep apnea makes it difficult for her to stay asleep. (A.R.  652.) Plaintiff stated that two of her medications, Cymbalta and Gabapentin, make her drowsy during the day. (A.R. 653.) Plaintiff explained that she does not do laundry. (A.R. 646.) She goes to the grocery store with her niece only occasionally, and she does not cook. (*Id.*) Plaintiff testified to having difficulty with bathing and dressing due to her pain, noting that her daughter assists her. (A.R. 650.) Plaintiff is not involved in community activities, but she goes to church on Sundays. (A.R. 654.) At church, she is able to stand for five minutes at a time. (A.R. 654.) Regarding her hobbies, Plaintiff explained that she enjoys reading, but has trouble doing so due to glaucoma. (A.R. 655.) Plaintiff noted that she does not have friends, but she socializes with her family and a woman who lives below her. (A.R. 655.)

### 2. Vocational Expert's Testimony

The Vocational Expert, Marilyn Stroud ("VE"), began by classifying Plaintiff's past work as an administrative assistant, which has a DOT Code of 169.167-010, a specific vocational preparation ("SVP") of 7, and a sedentary exertion level. (A.R. 659.) The VE stated that Plaintiff also has past work as a secretary, which has a DOT code of 201.362-030, an SVP of 6, and also a sedentary exertion level. (*Id.*)

The ALJ then asked the VE the following hypothetical:

> [A]ssume that [hypothetical claimant] can do light work standing or walking up to four hours per day; no push/pull with the right lower extremities; occasional push/pull with the right lower extremities; occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing or stooping; never kneeling, crouching, or crawling. Avoiding concentrated exposure to extreme temperatures, wetness and humidity; frequent handling and fingering; and avoiding all unprotected heights and operation control of moving machinery and ask whether or not [Plaintiff] could do either of [Plaintiff's] past work?

(A.R. 659-60.) The VE replied that the hypothetical individual could perform the past work. (A.R. 660.) The ALJ then asked whether the hypothetical claimant could perform such work if that person were limited to sedentary work and needed to use a cane to ambulate to and from the workstation. (*Id.*) The VE again responded that the hypothetical person would be able to perform the past work. (*Id.*)

The ALJ followed up and asked the VE to consider whether the hypothetical claimant could perform Plaintiff's past work if that individual were limited to simple, routine, and repetitive work. (*Id.*) The VE replied that past work could not be performed. (A.R. 661.) However, the VE did note that there was other work in the national economy for such an individual, including (1) router, which has a DOT number of 222.587-038 and is performed at a light exertion level with an SVP of 2, (2) order caller which has a DOT number of 209.667-014 and is performed at a light exertion

level with an SVP of 2, and (3) laundry classifier, which has a DOT number of 361.687-014 and is performed at a light exertion level with an SVP of 2. (*Id.*)

At the conclusion of the ALJ's questioning, Plaintiff posed a series of questions to the VE. (A.R. 661-65.) First, Plaintiff asked the VE to reconsider the ALJ's hypothetical and determine whether the hypothetical claimant could perform other work, as a router, order caller, or laundry classifier, while using a cane. (A.R. 662.) The VE explained that that the individual could not perform such work while using a cane. (*Id.*) Plaintiff then asked the VE whether a person could maintain full-time employment if that person were unable to sit, stand, or walk for less than eight hours a day. (A.R. 663.) The VE responded that that such a person would not be able to maintain full-time employment. (*Id.*)

Plaintiff then asked the VE whether a person could maintain full-time employment if that person would be off task for twenty-five percent or more of the workday (*Id.*) The VE responded that such a person would not be able to maintain employment. (*Id.*) Plaintiff then asked the VE whether a person could maintain full-time employment if that person would be absent for four days of the month. (*Id.*) Again, the VE responded that such a person would not be able to maintain employment. (*Id.*) Plaintiff next asked the VE whether a person could maintain Plaintiff's past work if that person was limited to no interaction with the general public or coworkers, and only superficial interaction with supervisors. (A.R. 664.) The VE responded that such a person would not be able to maintain work. (*Id.*) Lastly, Plaintiff asked the VE whether a person could maintain employment if that person needed to be redirected for attention and concentration every thirty minutes. (A.R. 665.) The VE replied that such a person would not be able to maintain work. (*Id.*)

C.     **ALJ Decision**

On March 3, 2020, the ALJ issued a written decision analyzing whether Plaintiff satisfied her burden to demonstrate disability using the standard five-step process. (A.R. 614-39.) At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (A.R. 620.) At step two, the ALJ found that Plaintiff's shoulder tendinopathy, carpal tunnel syndrome, arthritis of the knees, diabetic peripheral neuropathy, obstructive sleep apnea, and obesity were severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant CFR. (A.R. 624.) In so deciding, the ALJ specifically considered listings 1.02 (major dysfunction of a joint) and 11.14 (peripheral neuropathy). (A.R. 624-25.) The ALJ also considered SSR 19-2p to evaluate Plaintiff's obesity (*Id.*)

> The ALJ then found that Plaintiff has the RFC to perform sedentary work, except that:
>
> [S]he is limited to walking or standing up to four hours total in a workday; never pushing/pulling with the left lower extremity; no more than occasionally pushing/pulling with the right lower extremity; no more than occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; no more than occasionally balancing or stooping; never kneeling, crouching, or crawling; avoiding concentrated exposure to extreme temperatures, wetness, and humidity; no more than frequently handling and fingering; avoiding all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery; and must be permitted to use a cane to ambulate to and from the workstation.

(*Id.*). At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as an administrative assistant and secretary. (A.R. 630.) Specifically, the ALJ found that Plaintiff is able to perform the occupation of administrative assistant as it is generally and actually performed, and the occupation of secretary as it is generally performed. (*Id.*) As such, the ALJ

concluded that Plaintiff was not disabled from September 25, 2017, through the date of the ALJ's decision. (A.R. 631.)

## II.   <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id.* § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

15

handling." *Id.* § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See id.* § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47

n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and not disabled. *Id.*

### III.   PLAINTIFF'S CLAIMS ON APPEAL

On appeal, Plaintiff argues that the ALJ's step two finding that Plaintiff's mental impairments are not "severe" was not based on substantial evidence. (Pl. Br. at 26-33.) Moreover, Plaintiff asserts that the ALJ erroneously omitted those impairments from the RFC after finding them non-severe. (Pl. Br. at 26.) In addition, Plaintiff contends that the ALJ improperly rejected the medical opinion of Physician Assistant Faiza Qureshi in the RFC analysis. (Pl. Br. at 17-25.) I will address these arguments, in turn.

### A.   The ALJ Erred in Finding Plaintiff's Mental Impairments Non-Severe.

First, Plaintiff challenges the ALJ's decision not to characterize Plaintiff's mental impairments as severe, arguing that the medical record, including the opinions of a consultative examiner and a treating source, demonstrates mental limitations that would have more than a "minimal effect on Plaintiff's ability to do work related activities." (Pl. Br. at 26-33.) Specifically, Plaintiff contends that the ALJ erred by rejecting an opinion submitted by Plaintiff's treating psychiatrist, Dr. Hadjiesmaeiloo, which indicates that Plaintiff's mental impairments were disabling. (Pl. Br. at 29-30.) Here, I find that Plaintiff presented sufficient evidence regarding her mental impairments to meet the *de minimis* standard for severity at step two, and therefore, the ALJ erred in finding those impairments non-severe.

At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental

ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. "[A]n impairment is severe only if it significantly limits the claimant's physical or mental ability to do basic work activities." *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 144 (3d Cir. 2007) (internal quotations omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (internal quotations omitted.) If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *Id.* Any doubt as to whether this showing has been made is to be resolved in favor of the claimant. *Id.* at 546-47. In short, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id.* at 546.

Here, the ALJ found that, in addition to the severe impairments of shoulder tendinopathy, carpal tunnel syndrome, arthritis of the knees, diabetic peripheral neuropathy, obstructive sleep apnea, and obesity, Plaintiff suffers from medically determinable mental impairments including depressive disorder and PTSD. (A.R. 620-22.) The ALJ determined those mental impairments to be non-severe, however, because they presented as benign in status evaluations, caused only minimal limitations to Plaintiff's daily activities, past work, and education, and responded to treatment. (A.R. 621-22.) Specifically, the ALJ found that Plaintiff had only mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; adapting or managing oneself; and interacting with others. (*Id.*) Also, the ALJ concluded that Dr. Hadjiesmaeiloo's opinion, which cited Plaintiff's forgetfulness, distractibility, social withdrawal, and extreme sensitivity to perceived rejection and abandonment, was unpersuasive,

because there was "nothing in [the] treating records to suggest greater than a mild degree of limitation." (A.R. 623.) Rather, the ALJ accepted the opinions of three psychological consultants, Dr. Meyer, Dr. VanderPlate, and Dr. Borges, who each opined that Plaintiff had only mild mental limitations. (*Id.*)

Contrary to the ALJ's finding, the record demonstrates that Plaintiff suffers from mental impairments that would have more than a minimal effect on her ability to do basic work activities. First, Plaintiff received consistent treatment for her psychiatric conditions throughout 2019, visiting her treating psychiatrist, Dr. Hadjiesmaeiloo, four times from February to August. (A.R. 1138-46, 1389-91, 1406-08, 1423-25.) At each visit, Plaintiff reported symptoms of anxiety, depression, and PTSD, including sadness, depressed mood, excessive worry, insomnia, feelings of worthlessness, and panic. (*Id.*) Based on Plaintiff's reports and her evaluations of Plaintiff, Dr. Hadjiesmaeiloo prescribed Plaintiff anti-depressant medication to control her symptoms and increased Plaintiff's dosage when the symptoms did not initially improve. (A.R. 1143, 1149.) At the suggestion of Dr. Hadjiesmaeiloo, Plaintiff also attended psychotherapy for management of her symptoms. (A.R. 1152-55.) Throughout treatment, Plaintiff presented to her therapist, LPC Kenna, as anxious and depressed, such that LPC Kenna recommended continuing treatment. (*Id.*) Moreover, after treating Plaintiff for over eight months, Dr. Hadjiesmaeiloo completed a treating source statement regarding Plaintiff's mental conditions. (A.R. 1617-22.) There, Dr. Hadjiesmaeiloo opined that Plaintiff demonstrated forgetfulness, distractibility, social withdrawal, and extreme sensitivity to perceived rejection and abandonment. (*Id.*) In light of the foregoing evidence, even though the ALJ did not find such evidence persuasive, Plaintiff has met the *de minimis* requirement for severity at step two.

Although I find the ALJ erred in classifying Plaintiff's mental impairments as non-severe, however, that error was harmless. Indeed, as was the case here, errors at step two are generally harmless if the ALJ finds that the claimant has other severe impairments. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n. 2 (3d Cir. 2007) (noting that errors at step two are harmless if the ALJ "found in favor of Plaintiff," *i.e.*, found some other severe impairment); *Rosa v. Comm'r of Soc. Sec.*, No. 12-5176, 2013 WL 5322711, at *7 (D.N.J. Sept. 20, 2013) ("The Third Circuit has indicated that an ALJ's erroneous finding that some of a claimant's impairments are not severe at step two is harmless if the ALJ finds that the claimant has other severe impairments").

Here, in accordance with well-settled law, because the ALJ determined that Plaintiff has several other severe impairments, including shoulder tendinopathy, carpal tunnel syndrome, arthritis of the knees, diabetic peripheral neuropathy, obstructive sleep apnea, and obesity, the ALJ's error is harmless. Further, it is important to note that my conclusion remains the same even though the ALJ found only severe physical impairments. *See Id.* at *7 (holding that the ALJ's failure to classify the plaintiff's psychiatric dysthymic disorder as severe was harmless error, even though the ALJ found only physical impairments to be severe). Accordingly, remand is not appropriate based on the ALJ's error at step two.

**B.      The ALJ Improperly Omitted Plaintiff's Mental Impairments from the RFC**

In connection with her objection to the ALJ's step two findings, Plaintiff also argues that the ALJ erred by omitting Plaintiff's non-severe mental impairments from the RFC assessment. (Pl. Br. at 26.) Because I agree with Plaintiff's position, I find that remand is appropriate for the ALJ to consider the impact of Plaintiff's mental impairments on the RFC.

An RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those

that the ALJ has not deemed to be severe at step two. *See* 20 C.F.R. § 404.1545(a)(2). Therefore, an error at step two is only harmless where the ALJ has considered non-severe medically determinable impairments in the RFC determination, and the error would not otherwise impact the outcome of the case. *See Jennifer V. v. Comm'r of Soc. Sec.*, No. 20-17949, 2022 WL 1044966, at *5 (D.N.J. Apr. 7, 2022) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005)); *Hicks v. Colvin*, 15-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding"). Here, while the ALJ determined that Plaintiff had only mild mental limitations at step two, she did not adequately address how Plaintiff could perform her prior work in light of those impairments, albeit non-severe in the ALJ's view. Unlike the ALJ's failure to classify Plaintiff's mental impairments as severe, this error is not harmless, and therefore, it requires remand.

The court's decision in *Curry v. Comm'r of Soc. Sec.*, No. 15-07515, 2017 WL 825196, at *4 (D.N.J. Mar. 2, 2017) is instructive. There, the court remanded the matter because the ALJ failed to properly consider the plaintiff's mild to moderate mental impairments in the RFC analysis. *Curry*, 2017 WL 825196, at **4-6. In *Curry*, like here, the ALJ found that the plaintiff suffered mild mental impairments at step two of the analysis. *Id.* at *5. However, in conducting the subsequent RFC analysis, the ALJ made only a "passing reference to the medical evidence regarding [the plaintiff's] mental health." *Id.* In fact, "nowhere in the ALJ's RFC assessment" did the ALJ "specifically consider or address the impact of Plaintiff's mental limitations on her ability to work as an administrative assistant." *Id.* Although the court noted that the impact of those limitations on the plaintiff's ability to work "may be *de minimus*, or only require minor

21

modifications of Plaintiff's RFC," the court declined to "independently determine" their impact on the plaintiff's RFC. *Id.* Thus, the case was remanded "so that the ALJ may properly consider how Plaintiff's mental impairments affect her RFC and her capability to perform past relevant work." *Id.*; *see also Carratura v. Saul*, No. 20-05483, 2021 WL 4077565, at *7 (D.N.J. Sept. 8, 2021) (remanding the ALJ's denial of disability benefits because the ALJ failed to properly consider plaintiff's mental impairments in the RFC analysis); *Balla v. Comm'r of Soc. Sec.*, No. 18-00386, 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) (remanding to the ALJ because she did not "explain the 'impact of [the] Plaintiff's mental impairments on her ability to' complete the relevant work"); *Engle v. Berryhill*, No. 17-2185, 2019 WL 1003597, at *4 (M.D. Pa. Mar. 1, 2019) (holding that substantial evidence did not support the RFC and remanding because "the ALJ's decision is not clear whether the ALJ gave full consideration to plaintiff's mental impairments and whether he adequately accounted for them in determining her symptoms and her RFC").

Here, the ALJ never addressed the impact of Plaintiff's mild mental limitations on her RFC or her past work as an administrative assistant or secretary. Specifically, the ALJ does not reference Plaintiff's other mild or moderate mental limitations in her RFC analysis and, as in *Curry*, the ALJ fails to clearly explain the "impact of Plaintiff's mental impairments on [her] ability to complete the relevant work." *Curry*, 2017 WL 825196, at *5. Rather, the ALJ merely states within her RFC analysis that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (A.R. 624.) Such a conclusory statement does not convince the Court that the ALJ fully considered and appreciated Plaintiff's mental impairments in her analysis. *See Jennifer V.*, 2022 WL 1044966, at *5 (holding that remand is appropriate where the ALJ fails to explicitly reference non-severe

mental impairments in the RFC analysis itself). Indeed, simply because Plaintiff's mental restrictions might be classified as "non-severe" or "mild," does not necessarily indicate that Plaintiff could perform her past work at the calculated RFC, especially where Plaintiff's past work requires at least some degree of social interaction and mental acuity. *See Carratura*, No. 20-05483, 2021 WL 4077565, at *7. Therefore, I find that remand is required for the ALJ to expressly consider how Plaintiff's mental impairments impact her RFC.

### C.   The ALJ Properly Evaluated the Opinion of Faiza Qureshi

In addition, Plaintiff argues that the ALJ erred in finding the medical opinion of Qureshi unpersuasive and that the ALJ's RFC determination was therefore not based on substantial evidence. (Pl. Br. at 17-25.) Qureshi's opinion, according to Plaintiff, clearly shows that Plaintiff has disabling physical impairments that would preclude her from even sedentary work, specifically because Qureshi opined that Plaintiff would be off task for twenty-five percent of the workday and absent for four or more days each month. (Pl. Br. at 19.) Plaintiff asserts that, in so doing, the ALJ "mischaracterized" Qureshi's opinion, and the ALJ engaged in "picking and choosing" of evidence to support her RFC determination. (Pl. Br. at 20-21.) Plaintiff argues that, had the ALJ "properly evaluate[d]" Qureshi's opinion, the ALJ would have found Plaintiff to be disabled. (Pl. Br. at 24.) I disagree, finding that the ALJ properly considered Qureshi's opinion consistent with SSA regulations.

When analyzing a medical opinion for the purposes of an RFC evaluation, Social Security Administration ("SSA") regulations require the ALJ to determine the persuasiveness of that opinion based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other facts that tend to support or contract a medical opinion or prior administrative medical finding. C.F.R. § 404.1520c(c). Importantly, the

regulations emphasize that the "factors of supportability and consistency are the most important factors" in determining persuasiveness. C.F.R. § 404.1520c(b)(2). To determine supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical 21 finding(s) will be." C.F.R. § 404.1520c(c)(1). To determine consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." C.F.R. § 404.1520c(c)(2).

The ALJ appropriately considered Qureshi's medical opinion in accordance with relevant regulations, and determined that Qureshi's opinion was unpersuasive. First, the ALJ acknowledged Qureshi's conclusion that Plaintiff has several disabling impairments. (A.R. 629.) Specifically, the ALJ discussed Qureshi's findings that Plaintiff would be off task for more than twenty-five percent of the workday, absent for more than four days a month, and unable to sit for more than two hours total. (*Id.*) The ALJ also recognized that Qureshi affirmed several of Plaintiff's physical diagnoses, including fibromyalgia and osteoarthritis of the bilateral knees. (*Id.*) After analyzing the record, however, the ALJ determined that Qureshi "provided minimal rationale to support her finding of extreme limitations" and "her conclusions are inconsistent with other treating records." (*Id.*)

Regarding supportability, citing Qureshi's treating records, the ALJ found that Qureshi based her diagnoses on Plaintiff's explanation of Plaintiff's own medical history, rather than on objective medical evidence. (*Id.*) Further, despite the statement that Plaintiff had weakness of the lower extremities and diminished deep tendon reflexes, Qureshi's physical examination revealed no weakness or abnormal deep tendon reflexes. (*Id.*) Moreover, the ALJ noted that no evidence

24

exists in the record which indicates that Plaintiff has a reduced capacity for sitting. (*Id.*) Regarding consistency, the ALJ found Qureshi's opinion to be inconsistent with others in the record. (*Id.*) Particularly, the ALJ cited an examination by Dr. Yucht only a few days before Qureshi's examination which revealed that Plaintiff retained 5/5 motor strength in her left knee and that her pain had improved with steroid injections. (*Id.*) In addition, the ALJ noted that the medical opinions of two licensed state medical consultants, Dr. Bilenker and Dr. Simpkins, contradict Qureshi's findings and conclude that Plaintiff would be capable of light work. (*Id.*) Therefore, the ALJ properly considered Qureshi's opinion consistent with SSA regulations.

## IV.   **CONCLUSION**

For the reasons set forth above, the ALJ's decision is **VACATED**, and the Court remands this matter for further proceedings consistent with this Opinion. An appropriate Order shall follow.


Date:   July 13, 2022                                   /s/ Freda L. Wolfson
                                                        Freda L. Wolfson
                                                        U.S. Chief District Judge